UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )<br>CORITA YVONNE BURNETT, )<br>  )<br>Defendant. ) | Case No. 8:17-cr-374-RFR-SMB-4 |

**MOTION FOR REDUCTION OF SENTENCE PURSUANT
TO 18 U.S.C. § 3582(c)(1)(A)**

Corita Yvonne Burnett ("Burnett"), by and through the undersigned counsel, respectfully submits this Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A). In support thereof, Burnett offers the following:

## I. INTRODUCTION

On January 9, 2018, Burnett pled guilty to one count of possession of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). Burnett was sentenced to a term of 60 months imprisonment on April 12, 2019. Burnett is currently 46 years old and incarcerated at FCI Waseca with an anticipated release date of March 24, 2024.

In recent months, the COVID-19 pandemic has spread throughout the United States, putting vulnerable individuals at a high risk for serious illness or death in its wake. Burnett, her two sons, and two of her grandchildren are such people. Burnett herself suffers from type-2 diabetes, high cholesterol, heart arrhythmia, sleep apnea, morbid obesity, and type two fibromyalgia.

Both of her sons have been diagnosed with immune-weakening conditions and two of her grandchildren have been diagnosed with heart conditions. Their ability to function independently has been greatly hindered by the COVID-19 pandemic and the high risk the virus poses to them. As such, Burnett's familial responsibilities have changed significantly since the time of her sentencing. While a term of 60 months may have been reasonable at the time of Burnett's conviction, new and extenuating circumstances make continued imprisonment unnecessarily hazardous and severe in addition to hindering her ability to provide support to her children and grandchildren. Further, numerous district courts have found that the extreme health risks posed by COVID-19 to those with documented underlying conditions constitute "extraordinary and compelling" circumstances that warrant a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A). Based on the following, Burnett respectfully asks that this Court will enter an Order granting her § 3582(c)(1)(A) motion and reduce her sentence to a term of time served.

## II. APPLICABLE LAW

In December 2018, Congress enacted the First Step Act ("FSA") which modified Section 3582(c)(1) of Title 18 of the United States Code to allow a defendant to bring a motion for modification of sentence where "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Section 3582(c) now reads:

> (c) Modification of an Imposed Term of Imprisonment. –The court may not modify a term of imprisonment once it has been imposed except that—
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it find that—
>>
>>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>>
>>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>>>
>>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

If the Court finds the exhaustion requirements met and extraordinary and compelling circumstances are present, the Court may reduce a term of imprisonment "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Further, the statute

3

requires the Court "to consider the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable." *Id.*

A. *Exhaustion Requirement*

Although there has been a significant split among district courts on whether the exhaustion requirement of § 3582(c)(1)(A) is jurisdictional and/or excusable, two Courts of Appeals have recently weighed in on the subject. In *United States v. Raia*, the Third Circuit concluded that failure to comply with the statute's exhaustion requirement "presents a glaring roadblock foreclosing compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

More recently, the Sixth Circuit found that a prisoner's failure to exhaust his administrative remedies did not deprive the court of subject-matter jurisdiction; however, the court concluded that the exhaustion requirement "looks like a claim-processing rule, and in operation it acts like one." *United States v. Alam*, __F.3d__, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020). In so holding, the court noted:

> Even though this exhaustion requirement does not implicate our subject-matter jurisdiction, it remains a mandatory condition. If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only be moving for it on his own behalf. To do that, he must "fully exhaust [] all administrative rights to appeal" with the prison or wait 30 days after his first request to the prison. 18 U.S.C. § 3582(c)(1)(A).

*Id.*

4

B. *Extraordinary and Compelling Circumstances*

As many district courts have noted post-First Step Act, "Congress has not specified the circumstances that qualify as 'extraordinary and compelling reasons' except to state that a reduction pursuant to this provision must be 'consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Bucci*, No. CR 04-10194-WGY, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019). The applicable policy statement of the Sentencing Commission can be found at U.S.S.G. § 1B1.13, which its commentary states:

> 1. Extraordinary and Compelling Reasons. –Provided the defendant meets the requirements of subdivision (2) [not a danger to society], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant. –
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,

5

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. –The defendant (i) is at least 65 years old; (ii) is experiencing serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (c) Family Circumstances. –
>
>> (i) The death or incapacitation of a caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons. –As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13.

Since the enactment of the First Step Act, district courts across the country have found and given various meanings to the term "extraordinary and compelling." *See, e.g., United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399 (S.D.N.Y. Jan. 8, 2020) ("The rapid decline [in health] coupled with Ebbers's age present 'extraordinary and compelling reasons'"); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019) (concluding that the stacking provision of 18 § 924(c) constitutes extraordinary and compelling reason for reduction in sentence after the First

6

Step Act); and *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505 (M.D.N.C. June 28, 2019) ("Ms. Beck's invasive cancer and the abysmal health care BoP has provided qualify as 'extraordinary and compelling reasons' warranting a reduction in her sentence to time served.").

C. *Sentencing Commission Policy and 18 U.S.C. § 3553(a) Factors*

Section 3582(c)(1)(A) allows for a court to reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that– (i) extraordinary and compelling reasons warrant such a reduction; … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"

The § 3553(a) "factors include, among other things, '(1) the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as '(2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant.'" *United States v. Rodriguez-Orejuela*, No. 03-CR-20774, 2020 WL 2050434, at *4 (S.D. Fla. Apr. 28, 2020) (quoting 18 U.S.C. § 3553(a)).

Under § 1B1.13 of the U.S. Sentencing Guidelines, the Court may reduce a term of imprisonment after consideration of the § 3553(a) factors, if the Court determines that:

7

> (1) (A) extraordinary and compelling reasons warrant the reduction;
> …
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(1)-(3).

### III. A REDUCTION IN SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A) IS WARRANTED

A. *Burnett Has Met the Exhaustion Requirements of § 3582(c)(1)(A)*

On March 30, 2020, Burnett submitted her request for Compassionate Release/Reduction in Sentence pursuant to Bureau of Prisons ("BOP") Program Statement 5050.50, to the Warden of FCI Waseca. The Warden denied Burnett's request on April 9, 2020. Burnett has since begun her administrative remedy process.[1]

However, because more than 30 days have elapsed since Burnett made her initial request to the Warden, Burnett has met the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A). *See Alam*, __F.3d__, 2020 WL 284569, at *4 ("If [requesting compassionate release] doesn't work, prisoners can pursue administrative review. If that also comes up short (or if 30 days pass), prisoners have the option to go to federal court.").

---

[1] *See* Exhibit A.

8

B. *Extraordinary and Compelling Circumstances Justify a Reduction in Sentence*

As discussed above, district courts across the country have given various meanings to the term "extraordinary and compelling" circumstances. Under the commentary to U.S.S.G. § 1B1.13, extraordinary and compelling reasons may include: (A) medical conditions of the defendant; (B) age of the defendant; (C) family circumstances; or (D) other reasons. U.S.S.G. § 1B1.13, cmt. n. 1. "Other reasons" is further defined by the Guidelines as follows:

> (D) Other Reasons. –As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id*. As several courts have noted:

> § 1B1.13, as currently written, would not constrain this Court's ability to find extraordinary and compelling reasons here. As the Sentencing Commission's policy statement was not amended after enactment of the FSA "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" … "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 2020 WL 102024, at *3 (S.D. Cal. Mar. 3, 2020); (citing *Brown*, 411 F. Supp. 3d at 477, 499 (canvassing district court decisions)); *see also United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for the purpose of satisfying the ["FSA's"] 'consistency' requirement, an 'applicable policy statement.'")

> This Court is persuaded by the reasoning of numerous other district courts and holds that it is 'not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *United States v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020); *See also United States v. Perez*, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the

9

same discretion as the BOP director when it considers a compassionate release motion properly before it.")

*United States v. Etzel*, No. 6:17-CR-00001-AA, 2020 WL 2096423, at *3 (D. Or. May 1, 2020). Accordingly, this Court may find "extraordinary and compelling" reasons under U.S.S.G. § 1B1.13, cmt. n. 1(D).

The extraordinary and compelling circumstances presented in the instant case are twofold. Firstly, the health risk continued imprisonment poses to Burnett as a result of the COVID-19 pandemic and her underlying health conditions is severe. Burnett has been diagnosed with a heart arrhythmia and high cholesterol along with a body mass index ("BMI") that constitutes morbid obesity, all of which take a notable toll on her cardiovascular system. Burnett has also been diagnosed with sleep apnea and type-2 diabetes.[2] Additionally, Burnett reports that FCI Waseca has been failing to provide insulin consistently enough to manage her condition despite repeated high blood sugar tests. Burnett's access to adequate medical care for her myriad of health problems would be broadened considerably were she to obtain compassionate release.

On June 25, 2020, the Center for Disease Control ("CDC") made revisions to its list of underlying medication conditions that can cause an increased risk of severe illness or death from COVID-19. The CDC reports that people of any age with the following underlying medical conditions may

---

[2] Burnett is contemporaneously seeking leave to file her medical records under seal of court as an exhibit to the instant motion.

10

be at heightened risk: chronic kidney disease; COPD; immunocompromised state; obesity; serious heart conditions; sickle cell disease; Type 2 diabetes mellitus; asthma (moderate to severe); cystic fibrosis; hypertension or high blood pressure; neurological conditions; liver disease; pregnancy; pulmonary fibrosis (having damaged or scarred lung tissues); smoking, thalassemia; and Type 1 diabetes mellitus.[3]

According to CDC Guidelines, Burnett's underlying medical conditions put her at serious risk of severe illness or death if she contract the COVID-19 disease. Burnett's underlying risk factors present sufficient grounds to reduce her sentence under § 3582(c)(1)(A), an assertion that is echoed in cases across the country as well as within the Eighth Circuit where individuals with similar health concerns have been released due to the risk posed by the COVID-19 pandemic. *See, e.g.*, *United States v. Brown*, 4:05-cr-00227-RP-CFB-1, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020).

Currently, the BOP reports a total of 3,112 federal inmates and 259 BOP staff who have confirmed positive test results for COVID-19 nationwide.[4] 5,141 inmates and 615 staff have recovered; however, there has tragically been 95 federal inmate deaths and one BOP staff member death

---

[3]　https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

[4]　https://www.bop.gov/coronavirus/ (accessed July 14, 2020)

11

contributed to COVID-19. *Id.* FCI Waseca currently reports one active case of COVID-19 at the institution. *Id.*

Given COVID-19's recent surge in the federal prison system, several district courts have granted inmates' compassionate release requests. *See United States v. Foster*, No. 1:14-cr-324-02 (M.D. Pa. Apr. 3, 2020) ("The circumstances faced by our prison system during this highly contagious, potentially fatal global pandemic are unprecedented. It is no stretch to call this environment 'extraordinary and compelling,' and we all believe that, should we not reduce Defendant's sentence, Defendant has a high likelihood of contracting COVID-19 from which he would "not expected to recover." USSG SS 1B1.13. No rationale is more compelling or extraordinary."); *United States v. Colvin*, No. 3:19-cr-179 (JBA), 2020 WL 1613943 (D. Conn. Apr. 2, 2020) ("She has diabetes, a 'serious … medical condition,' which substantially increases her risk of severe illness if she contracts COVID-19…. Defendant is 'unable to provide self-care within the environment of FDC Philadelphia in light of the ongoing and growing COVID-19 pandemic because she is unable to practice effective social distancing and hygiene to minimize her risk of exposure, and if she did develop complications, she would be unable to access her team of doctors at Bridgeport Hospital. In light of the expectation that the COVID-19 pandemic will continue to grow and spread over the next several weeks, the Court concludes that the risk faced by Defendant will be minimized by her immediate release to home, where she will quarantine

12

herself."); *United States v. Brannan*, No. 4:15-cr-80-01 (S.D. Tx. Apr. 2, 2020) (emergency motion was granted same day of filing for prisoner who had served 9 months of a 36-month sentence for fraud at FCI Oakdale and had not exhausted BOP remedies); *United States v. Resnik*, No. 1:12-cr-00152-CM (S.D.N.Y. 2020) ("Releasing a prisoner who is for all practical purposes deserving of compassionate release during normal times is all but mandated in the age of COVID-19"); *United States v. Williams*, No. 3:04-cr-95-MCR (N.D. Fla. Apr. 1, 2020) ("Williams' cardiovascular and renal conditions compromise his immune system, which, taken with his advanced age, put him at significant risk for even more severe and life threatening illness should he be exposed to COVID-19 while incarcerated….Based on these facts, the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence."); and *United States v. Jepsen*, No. 3:19-cr-00073 (VLB), 2020 WL 1640232 (D. Conn. Apr. 1, 2020) ("Mr. Jepsen is in the unique position of having less than eight weeks left to serve on his sentence, he is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19, and the Government consents to his release. The Court finds that the totality of the circumstances specific to Mr. Jepsen constitute 'extraordinary and compelling' reasons to grant compassionate release.").

Secondly, Burnett asserts that her changed family situation should warrant a reduction in sentence. Burnett's two sons (18 and 20) both have immunocompromising conditions that put them at great risk for serous illness or death due to COVID-19. Two of Burnett's three grandchildren also have heart conditions that place them at high risk. While these diagnoses are not new, the advent of the COVID-19 pandemic in the United States sheds new light on the dangers they face and prevent them from adequately caring for themselves without assistance. Prior to her incarceration, Burnett provided such assistance to her children and grandchildren. Since her incarceration, all caretaking responsibilities have fallen to her daughter (24) who was recently diagnosed with bipolar psychosis. The increased need for familial support as a result of the spread of COVID-19 is evident. If released, Burnett could provide much needed support to her family at this time. Just as in *Bucci*, *supra*, Burnet's role as a potential caregiver to her children and grandchildren in tandem with her own health concerns constitute extraordinary and compelling circumstances that justify a reduction in sentence.

C. *A Reduction in Sentence is Warranted After Consideration of the 18 U.S.C. § 3553(a) Factors and Sentencing Guidelines Policy*

Having established that Burnett has exhausted her administrative appeal, and that extraordinary and compelling circumstances exist, the Court must consider the factors under 18 U.S.C. § 3553(a) and the Sentencing Guidelines policy to determine whether a reduction in sentence is warranted.

14

Based on the following, Burnett respectfully submits that these factors support a reduction of sentence.

Importantly, evidence of post-sentence rehabilitation is likely the most critical of core considerations for the Court in a § 3582(c) proceeding. In *Pepper v. United States*, 131 S.Ct. 1229, 1241 (2011), the Court emphasized the important nature of post-sentence rehabilitation, stating that "there would seem to be no better evidence than a defendant's post incarceration conduct."[5] *Id*. Indeed, the Court continued, "Post sentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id*. at 1242.

Looking to the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), Burnett accepted responsibility and pled guilty to her offense and has maintained that no number of mitigating circumstances excuse her wrongdoing. After incarceration, Burnett participated in the Residential

---

[5] "In addition, evidence of post sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. For example, evidence of post sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.' § 3553(a)(1). Such evidence may also be pertinent to 'the need for the sentence imposed' to serve the general purposes of sentencing set forth in § 3553(a)(2) – in particular, to 'afford adequate deterrence to criminal conduct,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with needed educational or vocational training…or other correctional treatment in the most effective manner.' §§ 3553(a)(2)(B)-(D); see *McMannus*, 496 F.3d, at 853 (Melloy, J., concurring) ("In assessing…deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post incarceration conduct"). *Pepper*, 131 S.Ct. at 1242.

Drug Abuse Program offered by the BOP and has behaved as a model inmate throughout her time. Burnett has a demonstrable and flexible release plan wherein she can live either with her children or her father. These options increase the likelihood that Burnett's reintegration out of incarceration will be successful. She is financially stable and capable of supporting herself and has access to medical care. She hopes to complete her business degree online through Kaplan University and maintain psychological treatment with Dr. Frank Bailey. These plans serve as testament to her commitment to self-improvement. Her release plan involves the love and support of her father, children, grandchildren, and friends.

Lastly, Burnett submits that she is not a danger to the safety of others. U.S.S.G. § 1B1.13(2). As discussed above, Burnett has dedicated herself to her rehabilitation and preparation for life after incarceration in addition to taking full responsibility for his wrongdoing. Burnett's aforementioned also release plan will ensure her successful integration into the community if granted compassionate release.

Taking into account Burnett's significant post-sentencing rehabilitation efforts and the substantial risks of continued incarceration, Burnett respectfully submits that a reduction under § 3582(c)(1)(A) to a sentence of time served is "sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a).

## IV. CONCLUSION

Based on the foregoing, Burnett respectfully prays that the Court grant her motion under 18 U.S.C. § 3582(c)(1)(A) and reduce her term of imprisonment to time served.

Respectfully submitted,

/s/ Jeremy Gordon
Jeremy Gordon
Jeremy Gordon, PLLC
1848 Lone Star Road, Suite 106
Mansfield, TX 76063
Tel: 972-483-4865
Fax: 972-584-9230
Email: Jeremy@gordondefense.com
TX Bar No. 24049810

*Counsel for Corita Burnett*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was duly served on all counsel of record via the Court's CM/ECF system this 14th day of July 2020.

<u>/s/ Jeremy Gordon</u>